UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LISA EVELYN MUNDALL,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-CV-00307-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 12, 13. Attorney Rosemary B. Schurman represents Lisa Evelyn Mundall (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 4. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Disability Insurance Benefits (DIB) on January 11, 2013, Tr. 194, alleging disability since September 5, 2011, Tr. 166-

167, due to anxiety, depression, post-traumatic stress disorder (PTSD), chronic lumbar pain, and chronic S.I. pain. Tr. 198. The applications were denied initially and upon reconsideration. Tr. 107-109, 111-112. Administrative Law Judge (ALJ) Jesse K. Shumway held a hearing on March 10, 2015 and heard testimony from Plaintiff, vocational expert, Daniel McKinney, and medical expert, Anthony Francis, M.D. Tr. 40-82. The ALJ issued an unfavorable decision on March 27, 2015. Tr. 13-29. The Appeals Council denied review on July 14, 2016. Tr. 1-7. The ALJ's March 27, 2015 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 29, 2016. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 43 years old at the alleged date of onset. Tr. 175. Plaintiff completed a Bachelor of Arts degree in creative writing in 1990. Tr. 199, 281. Plaintiff worked as an attendant counselor caring for the developmentally disabled from 1990 through her alleged date of onset. Tr. 199, 281. Plaintiff reported that she was injured on September 5, 2011 and returned to work on October 26, 2011 for only two hours before she was assaulted by a patient. Tr. 199, 282, 292. She reported that she stopped working due to her conditions. Tr. 198.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is

not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a), *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 27, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 5, 2011, the alleged onset date. Tr. 15.

At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, PTSD, and depression. Tr. 15.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 16.

At step four, the ALJ assessed Plaintiff's residual function capacity and found that from September 5, 2011 through May 21, 2014, Plaintiff could perform a range of sedentary work with the following restrictions:

> she could not climb ladders, ropes, or scaffolds, could only frequently balance, could only occasionally perform all other postural activities; could only frequently use foot controls bilaterally; could have no concentrated exposure to extreme cold, vibration, and pulmonary irritants; could have no exposure to hazards, including unprotected heights and moving mechanical parts; could perform only simple, routine, repetitive tasks; and could have only superficial contact with co-workers, supervisors, and the public.

Tr. 18. Then from May 21, 2014 through the date of the decision, the ALJ found Plaintiff had a "slightly different," residual functional capacity "reflecting improvement in her physical condition, but deterioration in her mental health." *Id*. Specifically, the ALJ found she could perform a range of light work, with the nonexertional limitations from the above residual functional capacity plus "she could have no interaction with the public." *Id*. The ALJ identified Plaintiff's past relevant work as an orderly and concluded that Plaintiff was not able to perform this past relevant work. Tr. 26.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform from onset to May 21, 2014, including the jobs of clock assembler, hand bander, table work, and production assembler. Tr. 28. The ALJ then made a separate step five determination for May 21, 2014 to the date of the decision, finding Plaintiff could perform the jobs of production assembler and electronics worker. *Id*. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from September 5, 2011, through the date of the ALJ's decision, March 27, 2015. *Id*.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly consider her testimony regarding her mental limitations and (2) failing to properly assess all the evidence when forming Plaintiff's residual functional capacity. ECF No. 12 at 2.

## DISCUSSION

### A. Plaintiff's Testimony

Plaintiff contests the ALJ's determination that her mental health symptom allegations were less than fully credible. ECF No. 12 at 5-11.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81

F.3d at 834.

The ALJ found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of her symptoms. Tr. 20. The ALJ reasoned that Plaintiff was less than fully credible concerning her alleged mental limitations because (1) the degree of limitation was not supported by the evidence of record, (2) she was able to speak and answer questions at the hearing, and (3) she was currently engaged in vocational rehabilitation. Tr. 25-26.

### 1. Evidence of Record

The ALJ found Plaintiff's testimony was less than fully credible, stating the alleged degree of limitation resulting from her mental impairments were not supported by the evidence of record. Tr. 25. First, the ALJ found that "there was evidence that claimant experienced some trouble with concentration in December 2012," but testified that her impairments only began to increase after she had been out of work for a year. Tr. 25. Plaintiff testified that her symptoms developed after she stopped working, "during the next year or so." Tr. 64. Plaintiff's alleged date of onset was in September of 2011. From September of 2011 to December of 2012 is about a "year or so." As such, Plaintiff's testimony was consistent with the record.

Next, the ALJ stated that "while the claimant continued to have nightmares and remained suspicious of vehicles traveling by her house, the record also indicates that the claimant had removed the covering from all her windows and was walking around her yard without the cover of tarps," citing to the record at 406 through 408 and 556. Tr. 26.

At the March 10, 2015 hearing, Plaintiff testified that there was a plywood billboard with a tarp at the bottom blocking her porch from the view of a neighbor. Tr. 61-62. She testified that originally she had "tarps going all the way around my backyard." Tr. 62. She additionally testified that she "put some tarps up on my garden fence" in order to do some gardening. Tr. 63. She acknowledged that her

phycologist had helped her, stating "[s]he got me back outside, so. I mean, it terrifies me but it's my favorite place to be, so." Tr. 68.

The records the ALJ cited show that on March 19, 2013, Plaintiff reported improvement in her mental health with new medications. Tr. 406. On January 7, 2015, Deborah S. Baldwin, Ph.D. wrote, "[s]he is no longer covering all her windows, and maintaining tarps ou[t]side near her house in order to feel safe enough to go into her yard (she even got her yard raked up this year. . .)." Tr. 557.

Plaintiff's testimony to originally having tarps around her entire property and only now having plywood and tarps around her porch and garden are consistent with the records cited by the ALJ. It shows that Plaintiff's mental health symptoms improved resulting in fewer barriers around her property over time. The ALJ fails to state how Plaintiff's testimony is undercut by the records she cites. The ALJ fails to demonstrate how some improvement, which was admitted by Plaintiff, was unsupported by the record and what bearing that had on Plaintiff's credibility. As such, this claim that Plaintiff's allegations are unsupported by the record is not specific, clear and convincing.

### 2. Actions at Hearing

Likewise, the ALJ concluded that Plaintiff's ability "to speak and answer questions directly and on point without hesitation at [the] hearing" was inconsistent with the degree of limitation she alleged. Tr. 25-26. An ALJ may rely on her observations made at a hearing. *Verduzco v. Apfel*, 188 F.3d 1087, 1090, (9th Cir. 1999). However, the ALJ failed to state how the ability to speak and answer questions was inconsistent with Plaintiff's alleged impairments. As such, this reason lacks the specificity required of *Lester* and is in error.

### 3. Vocational Rehabilitation

The ALJ's third reason for finding Plaintiff's mental health symptom reports less than fully credible, that she was involved in vocational rehabilitations, is not legally sufficient.

The Ninth Circuit has held that the ability to attend vocational rehabilitation classes can support an adverse credibility finding when the rehabilitation "indicat[es] activities in excess of the residual functional capacity." *See Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015). Here, Plaintiff testified that she was in the "plan development" stage of being retrained in an area where she could work from home. Tr. 69. Since Plaintiff was not yet engaged in work activities through the program, it is unclear if the rehabilitation resulted in activities in excess of the residual functional capacity. Therefore, this reason does not meet the specific, clear and convincing standard.

Considering the errors addressed above, this case is remanded for the ALJ to make a new credibility determination.

**B.     Residual Functional Capacity**

Plaintiff challenges the ALJ's residual functional capacity assessment arguing that the ALJ's assessment is not supported by substantial evidence. ECF No. 12 at 11-18.

A claimant's residual functional capacity is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c). In formulating a residual functional capacity, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities. *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

In this case, the ALJ found Plaintiff had the following residual functional capacity:

> she could not climb ladders, ropes, or scaffolds, could only frequently balance, could only occasionally perform all other postural activities; could only frequently use foot controls bilaterally; could have no concentrated exposure to extreme cold, vibration, and pulmonary

irritants; could have no exposure to hazards, including unprotected heights and moving mechanical parts; could perform only simple, routine, repetitive tasks; and could have only superficial contact with co-workers, supervisors, and the public.

Tr. 18. Then from May 21, 2014 through the date of the decision, the ALJ found Plaintiff had a "slightly different," residual functional capacity "reflecting improvement in her physical condition, but deterioration in her mental health." *Id*. Specifically, the ALJ found she could perform a range of light work, with the nonexertional limitations from the above residual functional capacity plus "she could have no interaction with the public." *Id*.

Plaintiff asserts that substantial evidence does not support the ALJ's conclusion that Plaintiff's mental health deteriorated and her physical health improved on May 21, 2014. ECF No. 12 at 12. The record contains no treatment notes dated May 21, 2014. Also, there is no indication that any substantial change occurred for Plaintiff on May 21, 2014. The mental health treatment records acknowledged a worsening of mental health symptoms and an improvement in physical symptoms around that time, but nothing specific to May 21, 2014. At the end of April 2014, Dr. Baldwin observed that Plaintiff was able to walk without the assistance of a cane and again had erected tarps around her property for protection. Tr. 574. On May 13, 2014 Plaintiff again discussed her reliance on tarps shielding her as a precursor to going outside. Tr. 570. On May 20, 2014, Plaintiff reported that she was unable to spend any time outside without the protection provided by the tarps around her property. Tr. 570-571. However, by June 3, 2014, Plaintiff reported some improvement in mental health impairments, including being able to walk around her property without the cover of tarps. Tr. 571.

While there may be evidence to support a shift in severity of Plaintiff's mental and physical impairments in late April and May of 2014, the ALJ failed to point to any evidence that supported a finding that a substantial change occurred

specifically on May 21, 2014 and was sustained to the date of the decision. While an ALJ is allowed to make inferences as to a Plaintiff's onset date, there must be a basis for the date in medical evidence. S.S.R. 83-20.[1] Here there is no medical evidence to support the specific date. As such, substantial evidence does not support the ALJ's determination.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to determine Plaintiff's credibility regarding

---

[1] While May 21, 2014 is not the onset date, it is the date the residual functional capacity changes, therefore it is analogous to an onset date.

her symptom reporting and to form a new residual functional capacity determination supported by substantial evidence. The ALJ will also need to supplement the record with any outstanding medical evidence and take testimony from a psychological expert and a vocational expert.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED August 23, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE